**Pedro Rodriquez BUSTAMANTE, Petitioner-Appellant,**

**v.**

**Frank A. EYMAN, Superintendent, Arizona State Prison, Respondent-Appellee.**

**No. 26506.**

United States Court of Appeals, Ninth Circuit.

Feb. 7, 1972.

Robert J. Corcoran (argued), LeRoy L. Miller, of Dushoff, Sacks & Corcoran, Phoenix, Ariz., for petitioner-appellant.

Roderic A. Dietz (argued), Gary K. Nelson, Ariz. Atty. Gen., Phoenix, Ariz., for respondent-appellee.

Before DUNIWAY and TRASK, Circuit Judges, and FERGUSON,* District Judge.

FERGUSON, District Judge:

Appellant was convicted of first degree murder by a jury in the Superior Court of Maricopa County, Arizona, and sentenced to life imprisonment. His conviction was affirmed on appeal to the Arizona Supreme Court. State v. Bustamante, 103 Ariz. 551, 447 P.2d 243 (1968). Thereafter, he sought a writ of habeas corpus in the United States District Court for the District of Arizona, pursuant to 28 U.S.C. § 2254. His petition was denied, and this appeal followed.

Upon the filing of the petition, the district court found that "[o]n its face, the petition raises several issues as to the constitutionality of petitioner's confinement". It directed the appellee to file the record of the state court proceedings, including the reporter's transcript of the preliminary hearing, the reporter's transcript of the trial, minute entries of record and photostated instruments of record. The appellee disregarded the district court's order, stating that "it is unnecessary to file such a voluminous addendum". The cause was then heard by the district court, based solely on the allegations of the petition and legal argument.

The petition sets forth nine separate contentions as constituting grounds for the allegation of illegal confinement. The fifth contention was "[p]etitioner was denied his right to be personally present during the rereading of the instructions to the jury". The district court resolved that issue against appellant as follows:

"5. As to petitioner's fifth contention: If this contention constitutes error, this Court concludes that such error was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705] (1967)."

It appears from the petition that—

1. When the jury was instructed by the court, the appellant was present, and the instructions were tape recorded.

2. When the cause was submitted to the jury, the appellant was taken from the courthouse to the county jail.

3. After seven hours of deliberation, the jury returned to the courtroom and requested a rereading of the instructions. The appellant was not brought back from jail. A judge different from the one who presided over the trial presided over the proceedings. Appellant was not informed of the court proceedings and did not even know that they had taken place until a year later.

4. The following appears from the clerk's minutes of the proceedings:

"10:30 P.M. Court reconvenes. The Jury has requested that the instructions be played back on the tape recorder.

"State's counsel is present; counsel for Defendant is present and the Jury is present.

* Honorable Warren J. Ferguson, United States District Judge, Central District of California, sitting by designation.

"Judge Melvyn Shelley is presiding.

"Defense counsel waives the presence of the Defendant. The Court approves of said waiver and repuests that instructions be played back to the Jury pursuant to said waiver.

"11:00 P.M. The instructions having been played back, the Jury retires to deliberate further."

5. Shortly after midnight, the appellant was taken from the jail into the courtroom where the jury pronounced its verdict of guilty.

■■ On that record alone, the district court held that the harmless error rule of *Chapman* applied. *Chapman* states: "[T]here may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." Chapman v. California, 386 U.S. at 22, 87 S.Ct. at 827. However, the burden of proving harmless error is a heavy one. The state must "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained". 386 U.S. at 24, 87 S.Ct. at 828.

In the setting of this case, the state has not proved that appellant's absence was harmless. All the district court had before it and all this court has, are the allegations in the petition set forth above, and the assertion of the appellee that "[i]t is impossible to comprehend how Bustamante was prejudiced by the replay of the taped instructions in his absence. He was present at the time the court instructed the jury and recorded the instructions. He could then have objected, requested additional instructions, or suggested changes, if any he had. We are living in a day of instant replay. As in the observation of a replay in a televised football game, it may definitely be determined whether the receiving player of a passed football is in bounds or out of bounds or a ball

carrier has crossed the goal line for dear old Arizona, so was the jury better able to consider the court's instructions especially after seven hours of deliberation in a jury room."

It is unfortunate that the trial of a capital offense would be categorized like a sporting event. In habeas corpus petitions "it is not a needle we are looking for in these stacks of paper, but the rights of a human being". Schaefer, Federalism and State Criminal Procedure, 70 Harv.L.Rev. 1, 25 (1956). Neither the district court nor this court knows what transpired in the courtroom during the 30 minutes the appellant was absent. The realities of life and the experience of everyone who has tried a lawsuit require the conclusion that statements are made by the court, counsel and jurors beyond what is contained in simple minute entries. The minute order involved here, on its face, shows that such statements were made by the jury, the court and counsel. Arizona was ordered by the district court to provide a complete record of the state trial court proceedings, but chose instead to withhold it.

■ The basic question is whether a defendant in a capital case has a federal constitutional right to be personally present at all the proceedings in the courtroom. If he does, then the state has not met the burden of proving beyond a reasonable doubt that the error here was harmless.

Rule 231 of the Arizona Rules of Criminal Procedure, 17 A.R.S., provides that in a prosecution for a felony the defendant shall be present at all proceedings before the court when the jury is present. That rule has been interpreted by the Arizona courts not to reach constitutional proportions; a defendant must prove prejudice. State v. Bustamante, *supra*, and State v. Cufio, 12 Ariz.App. 461, 471 P.2d 763 (1970).

■ The right of a defendant charged with a felony to be personally present in the courtroom at every stage of his trial conducted there is fundamen-

tal to our system of justice. This right was recognized by the Supreme Court many years ago: "A leading principle that pervades the entire law of criminal procedure is that, after indictment found, nothing shall be done in the absence of the prisoner." Lewis v. United States, 146 U.S. 370, 372, 13 S.Ct. 136, 137, 36 L.Ed. 1011 (1892). This principle has been consistently upheld and continually reaffirmed. See Hopt v. Utah, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884); Diaz v. United States, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912); Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). The rule includes the defendant's right to be present whenever the court communicates with the jury. Shields v. United States, 273 U.S. 583, 47 S.Ct. 478, 71 L. Ed. 787 (1927).

At common law the accused enjoyed a "privilege of presence". Snyder v. Massachusetts, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934); 8A J. Moore, Federal Practice, ¶ 43.02[1]. The principle that the defendant was to be present at every stage of the trial was explicitly recognized in Rule 43 of the Federal Rules of Criminal Procedure in 1946. The Advisory Committee Note thereto indicated that this was merely a restatement of existing law, citing Lewis, supra, and Diaz, supra. Similarly, the principle has long been recognized by constitution, statute or rule in most states. Since many of the reported cases rest upon an application of these statutes and rules, it has seldom been necessary to plumb the federal constitutional depths of the principle. Nevertheless, that the principle is embodied in the Constitution of the United States is clear.

In the early case of Hopt v. Utah, supra, the Court said:

" * * * the legislature has deemed it essential to the protection of one whose life or liberty is involved in a prosecution for felony, that he shall be personally present at the trial, that is, at every stage of the trial when his substantial rights may be affected by the proceedings against him. If he be deprived of his life or liberty without being so present, such deprivation would be without that due process of law required by the constitution." 110 U.S. at 579, 4 S.Ct. at 204–205.

In Diaz v. United States, supra, the Court reemphasized the fundamental character of the right. "In cases of felony our courts, with substantial accord, have regarded [the accused's right to be present] as extending to every stage of the trial, inclusive of the empaneling of the jury and the reception of the verdict, and as being scarcely less important to the accused than the right of trial itself." 223 U.S. at 455, 32 S.Ct. at 254.

This rationale went unchallenged until in Shields v. United States, supra, the Court declined to characterize the right as one encompassed within due process, choosing instead to view it as a "rule of orderly conduct of jury trial". 273 U.S. at 588–589, 47 S.Ct. at 479. In Snyder v. Massachusetts, supra, the Court held that the defendant accused of murder had no constitutional right to accompany the jury on a view. The Court stated:

"We assume in aid of the petitioner that in a prosecution for a felony the defendant has the privilege under the Fourteenth Amendment to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge. * * * Nowhere in the decisions of this court is there a dictum, and still less a ruling, that the Fourteenth Amendment assures the privilege of presence when presence would be useless, or the benefit but a shadow." 291 U.S. at 105–107, 54 S.Ct. at 332.

The Court summarized its position:

"So far as the Fourteenth Amendment is concerned, the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." 291 U.S. at 107–108, 54 S.Ct. at 333.

This decision was not unanimous. In a vigorous dissent, four Justices argued:

"Our traditions, the Bills of Rights of our federal and state constitutions, state legislation and the decisions of the courts of the nation and the states, unite in testimony that the privilege of the accused to be present throughout his trial is of the very essence of due process." 291 U.S. at 128–129, 54 S.Ct. at 340–341.

*Snyder* is clearly distinguishable. First, a complete record of everything that transpired during the jury view was prepared, and the court found as a fact that nothing which was done was prejudicial to the defendant. Here, we are entirely unaware of what happened during the court session. Secondly, Justice Cardozo was careful to set forth in great detail the fact that a view was not any part of a trial in the sense in which a trial was understood at common law. Here, the proceedings during which the appellant was absent occurred in the courtroom at a time when the most fundamental aspects of his trial took place. In Stein v. United States, 313 F.2d 518 (9th Cir. 1962), cert. denied, 373 U.S. 918, 83 S.Ct. 1307, 10 L.Ed.2d 417, reh. denied, 375 U.S. 872, 84 S.Ct. 32, 11 L. Ed.2d 102 (1963), this court refused to extend the right of presence to a conference in chambers. However, there, the record of the conference detailed the absolute lack of any prejudice to the absent defendant; indeed, the trial court during the conference ruled in the defendant's favor.

■ Recently the Court reaffirmed the rule that the accused's right to be present *in the courtroom* is of constitutional magnitude. In Illinois v. Allen, 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970), the Court emphasized that "[o]ne of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be *present in the courtroom at every stage of his trial.* Lewis v. United States, 146 U.S. 370, [13 S.Ct. 136, 36 L. Ed. 1011] (1892)". (Emphasis added.)

Since *Allen* involved the defendant's absence from the courtroom during a portion of the prosecution's case-in-chief, the defendant's right to confront the witnesses against him was directly involved. The Court's citation to *Lewis*, however, indicates. the broad intent of the holding. In effect, the Court took the opportunity in *Allen* to reaffirm the principle that "after indictment found, nothing shall be done in the abseence of the prisoner". 146 U.S. at 372, 13 S.Ct. at 137. The combined force of the Court's opinions in *Hopt, Lewis* and *Allen* indicates that this principle is founded upon both the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment. Furthermore, the defendant's right to be present during trial is obligatory upon the states. Illinois v. Allen, *supra*; Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

■ It follows that appellant here had a constitutional right to be personally present in the courtroom when the instructions were replayed for the jury. However, it is necessary to determine whether appellant waived this right or whether the attempted waiver by his counsel was effective. To the court's knowledge, the earliest case in which the Supreme Court considered the issue whether an accused could waive his right to be present at trial of a capital case was Hopt v. Utah, *supra*. The Court held that it was "not within the power" of the accused or his counsel to waive this right, because the right reflected the interests of the public in guaranteeing that life and liberty were not taken without due process of law. 110 U.S. at 579, 4 S.Ct. 202. *See also* Lewis v. United States, *supra*. Both *Hopt* and *Lewis* were capital cases. In Diaz v. United States, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912), the Court formulated the rule as follows:

"[A]n accused who is in custody and one who is charged with a capital offense [is] incapable of waiving the

right [to be present at all stages of his trial]; the one, because his presence or absence is not within his own control, and the other because, in addition to being usually in custody, he is deemed to suffer the constraint naturally incident to an apprehension of the awful penalty that would follow conviction." 223 U.S. at 455, 32 S.Ct. at 254.

In *Allen, supra*, the Court held that a defendant can lose his right to be present at trial if he conducts himself "in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom". 397 U.S. at 343, 90 S. Ct. at 1060, 1061. This "disruptiveness" exception to the general rule that a defendant in a capital case cannot waive his right to be present at trial does not signal the deterioration of the rule. In *Allen*, the Court was faced with a defendant determined to disrupt the proceedings and prevent any trial from taking place. Viewing this as a threat to the entire judicial system, the Court was compelled to fashion the narrow and specific exception. There is no indication in the opinion that the Court intended to erode the right of presence in any regard beyond the narrow exception there outlined; indeed, the opinion explicitly reaffirms the fundamental character of this right.

Since appellant was in custody for a capital offense and his absence was not necessitated by disruptive behavior, we hold that he did not, indeed could not, waive his right to be present in the courtroom at trial. Furthermore, there is no evidence that he even attempted to waive this right. He could not voluntarily have waived this right before the tape was replayed, because it appears that he was not even aware of this replay until almost a year later. Neither is there evidence that he attempted to waive this right after he gained knowledge of it.

It the appellant in a capital case could not waive his right to be present at trial except by disruptive conduct, it must certainly follow that whatever attempt counsel made in appellant's absence and without his knowledge to waive this right was without effect. United States v. Crutcher, 405 F.2d 239 (2d Cir. 1968), cert. denied, 394 U.S. 908, 89 S. Ct. 1018, 22 L.Ed.2d 219 (1969); Evans v. United States, 284 F.2d 393 (6th Cir. 1960).

Having determined that appellant was denied a federal constitutional right, the right to be present in the courtroom at every stage of his trial, the next step is to determine whether that error was harmless. Chapman v. California, *supra*. If the error was harmless, there is no reason to disturb the conviction. If, however, appellant's absence prejudiced his case, weakened his defense, or was otherwise harmful to his interests, a new trial must be held.

It cannot be argued that appellant's absence was *per se* harmless because his counsel was at all times present to guard his interests. In the first place, whether counsel who attempts without the defendant's knowledge to waive his right to be present can be trusted to protect the defendant's other rights is a dubious assumption.[1] More importantly, the presence of counsel is no substitute for the presence of the defendant himself. The right to be present at trial stems in part from the fact that by his physical presence the defendant can hear and see the proceedings, can be seen by the jury, and can participate in the presentation of his rights. But the right also rests upon society's interests in due process. As stated in *Hopt, supra*, "[t]he public has an interest in [the defendant's] life and liberty. Neither can be lawfully taken except in the mode prescribed by law". 110 U.S. at 579, 4 S.Ct. at 204. The defendant's right to be present at all proceedings of the tribunal which may take his life or liberty is designed to safeguard the public's interest in a

---

1. Present counsel was not trial counsel.

fair and orderly judicial system. The presence of counsel alone at trial can never be harmless *per se*.

We are unable from the record before us to determine whether the error was harmless. We have been told only that a tape recording of the original instructions was replayed in the courtroom in the presence of the jury, a new judge and counsel. The record does not disclose what, if anything, the judge said to the jury, or the contents of any other dialogue which may have transpired. We certainly cannot assume that nothing was said. Nor does the record show whether the tape recording was a full, complete and accurate recording of the original instructions, whether the jury could hear it, or even whether all members of the jury were present. These are crucial questions which must be answered.

We, therefore, reverse and remand to the district court for further proceedings. At that time the district court may wish to examine the other allegations of the habeas corpus petition, in accordance with the procedures mandated in Selz v. California, 423 F.2d 702 (9 Cir. 1970).

DUNIWAY, Circuit Judge (concurring):

I concur. The holding in this case is a narrow one. As I understand Judge Ferguson's opinion, it does two things. The first is to hold that, as a matter of federal constitutional law, a defendant in a state trial for a capital offense has a right to be present at every stage of the trial. I do not understand Judge Trask to dispute this proposition. Second, Judge Ferguson holds that without a record of what happened when the tape recording of the jury instructions was played back to the jury in the absence of the defendant, it is not possible to say that the error was harmless beyond a reasonable doubt. If the District Judge, on remand, gets a record of what happened at the proceeding in question, it will still be open to him, on the basis

of that record, to decide whether the error was harmless beyond a reasonable doubt. We merely hold that the court could not make that determination without a complete record.

I find it difficult to accept Judge Trask's statement that there is nothing to indicate that the record here is not complete. All that the court had before it was the Clerk's minutes, which do not purport to be a transcript. The District Court had asked for and the state had refused to provide a reporter's transcript of what was said and done. I see nothing startling in requiring that the record be produced for evaluation on the harmless error question by the District Judge.

TRASK, Circuit Judge (dissenting):

I would hold that the replay of a tape of electronically recorded instructions in the absence of the defendant, was not error of constitutional dimension and even if it were, it was harmless error. On the basis of the record before this court I would further declare my belief to be that it was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The case before us is reported in State v. Bustamante, 103 Ariz. 551, 447 P.2d 243 (1968). As stated by that court, the facts are as follows:

"Viewed in a light most favorable to upholding the verdict the following events occurred. At approximately 12:30 p. m. on February 5, 1966, the defendant arrived at 2913 West Garfield in Tolleson, Arizona, the home of the Ortiz family. At the time of defendant's arrival, Mr. and Mrs. Ortiz were sitting in the front room, and two of the Ortiz children were in a rear room watching television. Mr. Ortiz invited defendant to sit down, but he proceeded to the rear of the house to watch television.

"After watching television for a short time, defendant moved to the middle room of the house and began conversing with Mrs. Ortiz who was

still in the front room with her husband. Defendant asked her to iron a shirt for him. She refused, and told him that he should leave the house. As she spoke she turned her back to defendant and moved across the front room to stand by a window. Defendant walked into the front room and, without further words, pulled a .25 caliber revolver from his coat pocket and shot Mrs. Ortiz twice in the back and once in her right arm. At the first shot, Mr. Ortiz lunged for the defendant, but before he could reach him all three shots had been fired. As Mr. Ortiz struggled to wrest the gun from defendant, a fourth shot was fired into the ceiling. The defendant had purchased the revolver the day before the shooting." 447 P. 2d at 244.

The authorities cited by the majority do, indeed, contain strong language upholding the right of a defendant charged with a capital offense to be personally present in the courtroom at all stages of the trial. Here the Supreme Court of the state has held that the absence of the defendant during the replay of the instructions, without a showing of prejudice, was not cause for reversal. There is thus no violation of state law. The question posed by the majority, therefore, is whether a federal right was violated and whether that violation justifies the issuance of a writ. The majority points out that at common law the accused enjoyed a "privilege of presence" and that this rule is embodied in the Constitution. At common law, of course, the recording of the court's instructions electronically was unknown. The "privilege of presence" therefore referred to the right of the accused to be present at all times when testimony was taken, evidence was introduced, jurors were selected, instructions were given, the verdict was announced and sentence was pronounced. The absence of the defendant at any portion of those original proceedings was a violation of that privilege and that right.

The cases cited by the majority are of that kind and with them one can find nothing to disagree. In Hopt v. Utah, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884) for example, six jurors challenged for cause by the defendant were examined outside the courtroom and out of the presence of both the court and the defendant. Two were ultimately seated to try the defendant. Other cases cited are of similar tenor.

Here, however, the defendant and his counsel were both present during the entire trial including the instructing of the jury. The defendant and his counsel had full right of confrontation of witnesses, full right to cross-examination and to object to introduction of evidence or presentation of testimony and to make any objection to the proceedings or to offer the testimony of any witnesses or present any evidence.

The minutes of the clerk as recited by the majority indicate what took place at the time of the replay of the tape. There is no suggestion that the minutes are inaccurate or incomplete. The majority intimate that perhaps something untoward occurred; that the jury was not present; that they might not have been able to hear; or that there might have been other dialogue of some sort. The minutes quoted by the majority are clearly to the contrary. Neither appellant's counsel at the trial nor appellant's counsel on appeal have hinted at any such occurrence. The opinion of the court here calls atention to Snyder v. Mass., 291 U.S. 97, 54 S.Ct. 330, 78 L. Ed. 674 (1934). I, also, emphasize it. That, too, was a state trial for a capital offense. Snyder was sentenced to death, and the highest court of the state affirmed the conviction. During the trial and at the request of the state, the court indicated that it would permit the jury to view the scene of the crime. Counsel for Snyder requested that his client be permitted to view the scene with the jury, invoking the protection of the federal Constitution. The motion was denied. Mr. Justice Cardozo for the Supreme Court answered the contention

that the absence of the defendant at the view was a denial of due process under the Fourteenth Amendment. He pointed out that in earlier cases the absence of the defendant might well be said to have borne a relation, reasonably, substantial to the defendant's opportunity to defend. He continued:

"Nowhere in the decisions of this court is there a dictum, and still less a ruling, that the Fourteenth Amendment assures the privilege of presence when presence would be useless, or the benefit but a shadow. What has been said, if not decided, is distinctly to the contrary. Howard v. Kentucky, 200 U.S. 164, 175 [26 S.Ct. 189, 50 L.Ed. 421]; Valdez v. United States, 244 U.S. 432, 445 [37 S.Ct. 725, 61 L.Ed. 1242]. Cf. Frank v. Mangum, *supra*, and particularly the dissenting opinion at p. 346 of 237 U.S. [309] [35 S.Ct. 582, 59 L.Ed. 969]." 291 U.S. at 106, 54 S.Ct. at 332–333.

Again he pointed out:

"At the outset, we consider a bare inspection and nothing more, a view where nothing is said by any one to direct the attention of the jury to one feature or another. The Fourteenth Amendment does not assure to a defendant the privilege to be present at such a time. There is nothing he could do if he were there, and almost nothing he could gain. The only shred of advantage would be to make certain that the jury had been brought to the right place and had viewed the right scene. If he felt any doubt about this, he could examine the bailiffs at the trial and learn what they had looked at. The risk that they would lie is no greater than the risk that attaches to testimony about anything. 'Constitutional law, like other mortal contrivances, has to take some chances.' Blinn v. Nelson, 222 U.S. 1, 7 [32 S.Ct. 1, 7, 56 L.Ed. 65]. Here the chance is so remote that it dwindles to the vanishing point." 291 U.S. at 108, 54 S.Ct. at 333.

"The Fourteenth Amendment has not said in so many words that he must be present every second or minute or even every hour of the trial. If words so inflexible are to be taken as implied, it is only because they are put there by a court, and not because they are there already, in advance of the decision. Due process of law requires that the proceedings shall be fair, but fairness is a relative, not an absolute concept. It is fairness with reference to particular conditions or particular results." 291 U.S. at 116, 54 S.Ct. at 336.

It would appear that *Snyder* is a stronger case for the accused than the present one. There, the jury was presented with the actual scene for the first time and it was during the course of the trial. The court in his instructions described the view as part of the evidence. The majority here distinguishes *Snyder* upon the basis that there was a "complete record" and the fact that a view was not part of a trial "in the sense in which a trial was understood at common law." As to the complete record, there is nothing to indicate the record here is not complete. As to the historic concept of a view as not being a part of the trial, I take issue with the majority's basis of distinction. The opinion of the Supreme Court emphasizes time and again that the problem is fundamentally one of constitutional due process in the sense of a full and fair trial. Upon that measure we look primarily to the question of whether the defendant has been denied his ability to defend. There is nothing which the defendant here could do by being present at the replaying of the court's instructions to aid in his defense.

Mr. Justice Cardozo closes his opinion with the admonition that the Supreme Court should not supersede the particular state's forms with which its own sense of fairness and justice expresses itself in rules of law. His warning has been oft quoted and was repeated by Mr. Justice Stewart as recently as in Dutton

v. Evans, 400 U.S. 74, 89, 91 S.Ct. 210, 220, 27 L.Ed.2d 213 (1970).

"There is danger that the criminal law will be brought into contempt— that discredit will even touch the great immunities assured by the Fourteenth Amendment—if gossamer possibilities of prejudice to a defendant are to nullify a sentence pronounced by a court of competent jurisdiction in obedience to local law, and set the guilty free." Snyder v. Mass., 291 U.S. at 122, 54 S.Ct. at 338.

I would affirm the district court's denial of the Writ of Habeas Corpus.