UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert Paul GAGNON, Pedro Valenzuela, Donald P. Storms, Glenn E. Martin, Defendants-Appellants.

Nos. 82–1289, 82–1310, 82–1311 and 82–1350.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 12, 1983.

Decided Dec. 8, 1983.

---

Negatu Molla, Asst. U.S. Atty., Tucson, Ariz., for plaintiff-appellee.

Robert S. Wolkin, Stephen C. Villarreal, Michael L. Piccarreta, L. Anthony Fines, Tucson, Ariz., for defendants-appellants.

Before WISDOM,* SKOPIL and FERGUSON, Circuit Judges.

* Hon. John Minor Wisdom, Senior United Circuit Judge for the Fifth Circuit, sitting by designation.

FERGUSON, Circuit Judge:

Defendants were convicted after a jury trial of conspiracy to possess cocaine with intent to distribute and related felony drug offenses. They appeal on numerous grounds, most of which are disposed of by memorandum decision of this date. We deal here only with the contention that the trial court committed reversible error by questioning a juror during the course of the trial outside the presence of any of the defendants. We agree and reverse the convictions.

## FACTS

On the first day of trial, one of the jurors noticed defendant Gagnon sketching portraits of jury members. Juror Garold Graham became alarmed and informed the bailiff, who in turn informed the judge. Out of the presence of the jury, the judge told Gagnon that it was "very improper for a defendant to draw pictures of a jury while they are sitting in the box." She confiscated the sketches and ordered Gagnon to refrain from any further drawing.

Counsel for Gagnon asked the court to determine which juror had noticed the sketching and to arrange for questioning of that juror. The judge met with Graham in the presence of Gagnon's attorney, Robert Wolkin, in her chambers. None of the defendants were present, nor were counsel for the government or for the other defendants. The following took place:

THE COURT: Let the record show that we are meeting in chambers. Mr. Wolkin is present.

For the record, would you give us your name.

MR. GRAHAM: Garold Graham.

THE COURT: Mr. Graham, the bailiff gave me your note. As you know, Mr. Wolkin is Mr. Gagnon's attorney; the man who was sketching in the courtroom.

MR. GRAHAM: Yes.

THE COURT: Mr. Gagnon is an artist. It was just one of those things that happened. The Court has stopped it. It won't continue.

However, if because of this you feel like you couldn't be—you know—that that would affect you in any way, then I want you to tell us about it.

MR. GRAHAM: As far as any judgment on what's going on, it doesn't affect me. I just thought that perhaps because of the seriousness of the trial, and because of—whichever way the deliberations go, it kind of—it upset me, because—of what could happen afterwards.

THE COURT: Well, do you feel that it upset you to the extent that you couldn't judge Mr. Gagnon fairly—

MR. GRAHAM: No.

THE COURT: —as you would all the others?

MR. GRAHAM: No.

THE COURT: You could be fair to everyone concerned; you're sure of that?

MR. GRAHAM: Yes.

THE COURT: Because if you don't think you could, now is the time to tell us about it.

MR. GRAHAM: I can be fair.

THE COURT: I'm glad you brought it to our attention. I didn't notice it, and counsel didn't—

MR. GRAHAM: I noticed him looking at certain people, and I noticed him looking at me one particular time there; and I didn't know what was going on, until just before the recess. He had pulled his paper up there, and I could see him drawing portraits. And one of the other gentlemen in there had mentioned that he had also seen something of him doing—some sketching, but he didn't know what it was.

THE COURT: Has anybody else mentioned it?

MR. GRAHAM: No.

THE COURT: Does that satisfy you?

MR. WOLKIN: I'm just wondering about the conversation between the juror and the bailiff; whether that was said in front of the jury or not.

MR. GRAHAM: No. I talked with the bailiff in the hallway, after everyone had gotten in.

THE COURT: So nobody else heard you say anything about this?

MR. GRAHAM: No.

THE COURT: Well, we have the pictures. It won't continue. And we'll just go ahead as we are.

If you feel safe, secure—

MR. GRAHAM: Right.

THE COURT: You would feel comfortable in continuing serving as a juror?

MR. GRAHAM: I feel comfortable.

MR. WOLKIN: This wouldn't prejudice you in any way against Mr. Gagnon?

MR. GRAHAM: No.

THE COURT: Because, of course, it was just inadvertence—as an artist, I guess—he just did it.

Okay. Thank you very much. I would ask you not to bring this up with the other jurors, if you would please.

MR. GRAHAM: Okay.

THE COURT: I mean, don't say anything about the pictures, or about anything else that has transpired here.

MR. GRAHAM: Yes, ma'am.

THE COURT: But I can assure you that the pictures are here, and that there won't be anymore.

MR. GRAHAM: Thank you.

THE COURT: Okay. Is that agreeable with you?

MR. WOLKIN: Yes.

THE COURT: Very well.

(RT 189–192).

A transcript of the *in camera* proceeding was available to all of the parties, and no defendant objected to the proceeding during the trial. On appeal, however, all four defendants allege that this proceeding violated their sixth amendment right to an impartial jury and their statutory right to be present at every stage of their trial.

We have not considered whether the effect of this incident violated the defendants' right to an impartial jury as we have not found that one or more jurors was actually biased against any of the defendants. However, because the defendants' right to be present at all stages of the trial was violated, that violation may have operated to allow a biased member to remain on the jury.

ANALYSIS:

I. *The Right of Presence*

The right of a criminal defendant to be present at every stage of his trial has been variously characterized as guaranteed by the due process clause of the fifth (and, in state cases, the fourteenth) amendment, the confrontation clause of the sixth amendment, or some combination thereof. *See, e.g., Illinois v. Allen,* 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970) (confrontation clause); *Snyder v. Massachusetts,* 291 U.S. 97, 107–08, 54 S.Ct. 330, 332–33, 78 L.Ed. 674 (1934) (due process); *Bustamante v. Eyman,* 456 F.2d 269, 273 (9th Cir.1972) (confrontation clause and due process). The precise source of the right often depends on the context in which the alleged violation occurred. *See Shields v. United States,* 273 U.S. 583, 588, 47 S.Ct. 478, 479, 71 L.Ed. 787 (1927) ("rule of orderly conduct of jury trial"). Regardless of its source, the right itself has been recognized throughout the development of American criminal jurisprudence. "A leading principle that pervades the entire law of criminal procedure is that, after indictment found, nothing shall be done in the absence of the prisoner." *Lewis v. United States,* 146 U.S. 370, 372, 13 S.Ct. 136, 137, 36 L.Ed. 1011 (1892).

However, "it has seldom been necessary to plumb the federal constitutional depths of the principle," *Bustamante,* 456 F.2d at 273, because most jurisdictions recognize the principle through statute or rule. In federal criminal trials, the right is codified in Fed.R.Crim.P. 43. With a few specific exceptions not relevant here, Rule 43 requires the presence of the defendant "at every stage of the trial including the impaneling of the jury and the return of the verdict."

The constitution, principles of jury trial, and Rule 43 all guarantee a defendant the right to be present during communications between the judge and the jury. *Rogers v. United States,* 422 U.S. 35, 39, 95

S.Ct. 2091, 2094, 45 L.Ed.2d 1 (1975) (Rule 43 and prior decisions); *Shields,* 273 U.S. at 588–89, 47 S.Ct. at 479 (orderly conduct of jury trial); *Bustamante,* 456 F.2d at 273 (constitutional right). However that guarantee is not absolute. The defendant's presence is not required in those situations where his presence would be useless, or the benefit but a shadow. *Snyder v. Massachusetts,* 291 U.S. at 108, 54 S.Ct. at 333 (no constitutional right to accompany the jury on a view because the defendant's absence could have no effect); *see also Faretta v. California,* 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 2533 n. 15, 45 L.Ed.2d 562 (1975).

Generally, the absence of a defendant from an *in camera* conference between a juror and the court where the court seeks to determine the juror's bias is held to be harmless error either because the conference dealt with an issue of law and was thus exempt under Fed.R.Crim.P. 43(c) or because the defendant's rights were fully protected by counsel.

In *United States v. Polizzi,* 500 F.2d 856 (9th Cir.1974), the possibility of juror bias against the defendant arose from newspaper publicity about the case printed during trial. The court found:

> When the possibility of prejudice from publicity arises during trial, the trial court has "the affirmative duty ... to take positive action to ascertain the existence of improper influences on the jurors' deliberative qualifications and to take whatever steps are necessary to diminish or eradicate such improprieties." *Silverthorne v. United States,* 400 F.2d 627, 643 (9th Cir.1978) [other citations omitted]. The better practice, if there is a clear chance of prejudice, is for the court to interrogate each juror *in camera* about the possibly prejudicial publicity.

*Id.* at 880. However, the issue is not as simple in the instant case. The potential bias here did not arise from *outside* sources such as newspaper reports with which the defendant had no connection. Rather it arose through the in-court activities of the defendant which not only took place in the presence of the jury, but directly involved the jury. The government relies upon this reasoning to argue that the presence of defendants Valenzuela, Storms and Martin, who were not even represented by counsel at the *in camera* proceeding, was unnecessary as only defendant Gagnon was involved.

■ However, in a conspiracy case the evidence presented must link the defendants together in order to establish concert of action. A co-conspirator is vicariously liable for the acts of another co-conspirator even though he may not have directly participated in those acts, his role in the crime was minor, or the evidence against a co-defendant more damaging. *United States v. Saavedra,* 684 F.2d 1293, 1300–01 (9th Cir. 1982), *citing United States v. Basey,* 613 F.2d 198, 202 (9th Cir.1979), *cert. denied,* 446 U.S. 919, 100 S.Ct. 1854, 64 L.Ed.2d 274 (1980). Therefore, since the evidence against one defendant may be used against another, it is not unreasonable to fear that the prejudice against one may be extended to the others, especially under the facts of this case, where juror Graham apparently felt concern about the possibility of future retaliation. Therefore, we cannot say that Gagnon's co-defendants had no stake in the determination of whether Graham could continue to be impartial, nor can we say that Gagnon's counsel could effectively safeguard their interests.

■ As to defendant Gagnon, although his attorney proclaimed himself satisfied with Graham's statements, the juror did indicate that another juror had also noticed Gagnon's activities. Had Gagnon been present, he could have gauged the possibility of whether, given the distance and angle of the second juror's seating relative to himself, that second juror might have seen or guessed the subject of the pencil sketches.

Even if we were convinced that the presence of some or all of the defendants would have been but a "shadow" of benefit to them, so as to foreclose their due process right to attend the proceeding under *Snyder,* this circuit has stated that the protection offered by Rule 43 "is broader than the

sixth amendment right to confrontation and the fifth amendment due process rights." *United States v. Christopher,* 700 F.2d 1253, 1261–62 (9th Cir.1983); *accord United States v. Turner,* 532 F.Supp. 913, 916 (D.C. Cal.1982).

## II. *Waiver*

■ Rule 43 does, of course, make provision for the absence of a defendant without written consent in certain situations. Under subsection (c), no written consent is required for a corporation to appear by counsel, or for a defendant to be absent during discussion of a question of law or at a reduction of sentence. *United States v. Veatch,* 674 F.2d 1217, 1225–26 (9th Cir. 1981). These situations are not applicable here. Rule 43(b) also provides that "the defendant shall be considered to have waived his right to be present" when he:

(1) voluntarily absents himself after the trial has commenced (whether or not he has been informed by the court of his obligation to remain during the trial), or (2) after being warned by the court that disruptive conduct will cause him to be removed from the courtroom, persists in conduct which is such as to justify his being excluded from the courtroom.

There is no contention that Gagnon's behavior was disruptive within the meaning of Rule 43(b)(2), and the behavior of the other defendants was not even an issue in the *in camera* proceeding. Thus the question posed is whether Gagnon and/or the other defendants waived their right to be present by voluntarily absenting themselves.

As in *United States v. Ford,* 632 F.2d 1354, 1379 (9th Cir.1980), "[a]lthough the record suggests that [the defendant]'s absence was voluntary, we cannot conclusively determine that it was." (Footnote omitted). The record shows that the district judge announced in open court her intention to question juror Graham in chambers, but does not disclose how it came about that only Mr. Wolkin (Gagnon's attorney) attended the conference.[1] There is no indication of whether Gagnon or the other defendants expressly or impliedly indicated their willingness to be absent from the conference. It is true that none of the defendants objected to the *in camera* proceeding during the remainder or at the close of trial, but under our analysis in *Ford,* that fact is relevant only to the question of resulting prejudice, not to the question of voluntary absence. 632 F.2d at 1379.[2]

The standard for determining whether a criminal defendant has waived a constitutional right is even more stringent than that provided by Rule 43(b), requiring "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1958). Since we are unable to conclude that defendants voluntarily absented themselves within the meaning of Rule 43(b), *a fortiori* we cannot conclude that they knowingly and intelligently waived their constitutional right to be present.

## III. *Harmless Error Rule*

■ Although we have determined that defendants' constitutional and statutory

---

**1.** At oral argument on appeal, Wolkin stated that he was invited to the conference through a note from the judge delivered by the bailiff.

**2.** The government argues that because none of the defendants objected to the *in camera* proceeding during the trial, they may not raise the issue on appeal. The short answer to that contention is that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Fed.R.Crim.P. 52(b). A criminal defendant's right to be present at every stage of his trial is so fundamental that, in certain circumstances, its violation must be noticed by a reviewing court regardless of a failure to raise the issue below. *Rogers v. United States,* 422 U.S. 35, 41, 95 S.Ct. 2091, 2095, 45 L.Ed.2d 1

(1975) (violation of Rule 43 raised by Supreme Court *sua sponte*). We are aware of our holding in *Polizzi v. United States,* 550 F.2d 1133, 1137 (9th Cir.1976), that an objection to the defendants' absence need not be considered on a motion for relief under 28 U.S.C. § 2255 (the federal counterpart of habeas corpus) when the objection was not raised either during the trial or on appeal of the conviction. Such a holding neither prevents a court from noticing the objection, nor addresses the situation of a defendant who does raise the objection on appeal. We note also that such an issue was considered on appeal in *United States v. Ford,* 652 F.2d at 1378–79, despite a failure to raise it before the trial court.

rights were violated by an examination of a potentially biased juror in their absence, we must make one further inquiry. With a few notable exceptions, the violation of a constitutional right does not require reversal if the violation was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 21–22, 87 S.Ct. 824, 826–827, 17 L.Ed.2d 705 (1967). The government must "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* at 24, 87 S.Ct. at 828. The burden is on the government to establish this. *Id.* at 24–26, 87 S.Ct. at 828–829. And Rule 43 must be read in conjunction with Rule 52(a), which provides that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." This circuit stated in *United States v. Ford,* 632 F.2d at 1379 n. 28:

> *Akins v. Cardwell,* 500 F.2d 47, 47 (9th Cir.1974) (per curiam), suggests that a presumption of prejudice arises when any portion of a trial occurs during a defendant's or his counsel's absence, and that the government must clearly rebut that presumption. However, our more recent cases do not follow the *Akins* presumption. In *United States v. Cassasa,* 588 F.2d 282 (9th Cir.1978), *cert. denied,* 441 U.S. 909, 99 S.Ct. 2003, 60 L.Ed.2d 379 (1979), for example, we responded to the defendant's presumption of prejudice argument by stating that: "[c]ounsel's absence during judge-jury communication is harmless error if no reasonable possibility of prejudice could result." *Id.* at 285. Thus, the government bears the burden of proving that the defendant's absence was harmless only if the absence presents a reasonable possibility of prejudice. For reasons set forth in the text, we conclude that no reasonable possibility of prejudice to Armstrong arises from the reading of the Scannell testimony in his absence.

We need not resolve this apparent conflict in precedent. We have stated in Part I, *supra,* that a reasonable possibility of prejudice arose with regard to all defendants, and thus under either the *Akins* or *Ford*

test, the burden in this case must rest on the government.

Whether the government must prove that a violation of Rule 43 is harmless beyond a reasonable doubt or to some lesser degree of certainty has not been specifically addressed in this circuit. *Cf. United States v. Reynolds,* 489 F.2d 4 (6th Cir.1973), *cert. denied,* 416 U.S. 988, 94 S.Ct. 2395, 40 L.Ed.2d 766 (1974) (error reversible if any reasonable possibility of prejudice); *United States v. Freed,* 460 F.2d 75 (10th Cir.1972) (standard is clear prejudice). Few of our cases have had reason to explore that area of the Rule 43 presence right that is outside constitutional protection. Given our prior finding that the defendants' due process rights were violated by proceeding in their absence without determining whether the absence was voluntary, we need only assess the prejudice in this case under a "harmless beyond a reasonable doubt" standard.

We cannot find the error here to be harmless beyond a reasonable doubt. The presence of the defendants was necessary in order to safeguard another constitutional right—the right to an impartial jury. While we cannot say on this record that the right to an impartial jury was infringed, we also cannot say with assurance that the absence was harmless.

The district court is REVERSED.

SKOPIL, Circuit Judge, dissenting:

I agree that the district court erred in examining the juror without all defendants present. I also agree that we must reverse unless the government is able to prove beyond a reasonable doubt that this error did not contribute to the verdicts. I believe, however, that the government met its burden here.

Prior to examining the juror in-chambers in the presence of defense attorney Wolkin, the judge stated in open court her intention to conduct the examination. Despite being aware that the court recessed for the specific reason of examining the juror, none of appellants' counsel objected to it being conducted in their absence. Their failure to object is to be considered when determining

whether the error was harmless. *United States v. Ford,* 632 F.2d 1354, 1379 (9th Cir.1980); *United States v. Walls,* 577 F.2d 690, 698 (9th Cir.), *cert. denied,* 439 U.S. 893, 99 S.Ct. 251, 58 L.Ed.2d 239 (1978).

Appellants' attorneys not only failed to object to the examination, but attorney Wolkin was present to guard against any irregularities. *Ford,* 632 F.2d at 1379; *United States v. Friedman,* 593 F.2d 109, 121 (9th Cir.1979). Defendants charged with conspiracy have similar interests. Attorney Wolkin exercised his opportunity to question the juror directly and came away satisfied of his impartiality. At the end of the examination, he expressed his agreement with the court's conclusion not to remove the juror. It is difficult to conceive of any value from the presence of defendants and the remaining defense attorneys. Their questions would have been mere surplusage to those posed by attorney Wolkin and the court.

The examination at issue was made part of the official record. In *Spain v. Rushen,* 543 F.Supp. 757, 770 (N.D.Cal.1982), *aff'd without opinion,* 701 F.2d 186 (9th Cir.1983), no record was made of the conversations between judge and juror. This private nature prevented any error from being "readily apparent on the record." Here, no objection was registered by defendants over the subject matter or the conduct of the examination. Review of the record suggests why defendants did not object.

After assuring the juror that the drawing by Mr. Gagnon would cease, the court asked the juror whether he was upset to the extent that he could not judge Mr. Gagnon and the others fairly. The juror responded negatively. The court then posed other similar questions. The juror indicated that he would continue to be impartial. Attorney Wolkin's question elicited the same response. Upon terminating the examination the court properly instructed the juror to not discuss the matter with other jurors. *Id.* at 767.

The examination of the juror in the absence of all but one defense attorney was harmless error. The added presence of the defendants and their counsel would have been superfluous and quite possibly detrimental to their interests. *Polizzi v. United States,* 550 F.2d 1133, 1137 (9th Cir.1976). The district court clearly did not abuse its discretion in determining that the juror would remain impartial. *United States v. Perez,* 658 F.2d 654, 663 (9th Cir.1981). The court and attorney Wolkin were aware of the potentially damaging influence and their questions were directed to that end. The juror consistently responded that he would remain fair and impartial. More specific questioning was unnecessary.

I would affirm.