959 F.2d 239
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Dale Michael BLOYD, Petitioner-Appellant,
v.
James ROWLAND, Director of California Department of
Corrections, Respondent-Appellee.
 No. 91-15179.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 11, 1991.
Decided March 31, 1992.
 
 Before WILLIAM A. NORRIS, BEEZER and LEAVY, Circuit Judges.
 MEMORANDUM*
 This petition for a writ of habeas corpus involves a criminal defendant's constitutional rights to confrontation, counsel, effective assistance of counsel and due process. Dale Michael Bloyd appeals the district court's (Shubb, J.) denial of his application for the writ. The district court (Levi, J.) issued a certificate of probable cause. We have jurisdiction and we affirm.
 
 
 1
 * A comprehensive account of the facts appears in People v. Bloyd, 43 Cal.3d 333, 729 P.2d 802, 805-08, 233 Cal.Rptr. 368 (1987). Martha Jones (Martha) and Bloyd, cohabitants, went to visit Martha's family, headed by her eighty-one year old father William North, at her parents' mobile home because Martha's mother was in the hospital. Other family members were also present. In the early morning of April 27, 1981, Martha and North were shot to death. A state trial jury convicted Bloyd of first degree murder in North's death and second degree murder in Martha's death.
 
 
 2
 North's body was found slumped against the hallway wall near a heater with his legs bent under his body. A gunshot entry wound on the top of his head and an exit wound below his ear on the other side of his head indicated a slaying while North was kneeling. North's body was between Martha's body and the resting place of the bullet that killed her. The police found none of that bullet's fragments or Martha's tissue or blood on North's body. Bone fragments and hair materials which were later proved to be Martha's were found down the hall near where Martha's bullet lodged. The copper jacket from the bullet that killed North was found lying near North on Martha's prone body. From this evidence the jury could conclude that Bloyd killed North while he was kneeling over his daughter's body, after Bloyd had shot Martha. Bloyd testified that Martha shot her father while he was standing, and then turned her .357 magnum on Bloyd.
 
 
 3
 Bloyd claimed he and Martha then engaged in a struggle, while standing, and the .357 magnum accidentally discharged, causing Martha's face to explode. Martha was five feet eight inches tall. The gunshot entry wound was in Martha's left eye and the exit wound was in the right side of her skull. The bullet that killed Martha left a horizontal gouge mark in the hallway wall. The gouge mark was twenty-one inches above the floor at its beginning (near Martha's head) and gradually sloped downward to the bullet's resting place, sixteen inches above the floor in the master bedroom door. Martha's body had no bruises or lacerations that would indicate a struggle.
 
 
 4
 Bloyd's state trial counsel introduced considerable evidence of Martha's violent and aggressive tendencies when she became intoxicated. She had a blood alcohol content of .23% when she died. Her blood analysis also revealed diazepam (Valium) in a concentration of one part per million, a level consistent with a constant user of the drug. A toxicologist testified that although diazepam generally reduces anxiety and violent behavior it could have different effects on different people when combined with alcohol.
 
 II
 
 5
 We review de novo a determination whether to grant an application for a writ of habeas corpus. We review any findings of fact made by the district court for clear error. Norris v. Risley, 878 F.2d 1178, 1180 (9th Cir.1989). State court factual determinations are entitled to a presumption of correctness under 28 U.S.C. § 2254(d). Hamilton v. Vasquez, 882 F.2d 1469, 1470-71 (9th Cir.1989). That presumption does not extend to mixed questions, id., or legal conclusions. Miller v. Fenton, 474 U.S. 104, 112 (1985). Factual determinations may be implicit in actions taken by the state court. Marshall v. Lonberger, 459 U.S. 422, 433-34 (1983).
 
 III
 
 6
 The parties agree that the state trial court violated Bloyd's sixth amendment rights to confrontation and counsel. Neither Bloyd nor his state trial counsel was present when the court reporter read back selected testimony to the jury, and Bloyd was not present when the court decided to allow the jury to consider as evidence a bottle of diazepam found in Martha's bathrobe after the jury had begun its deliberations. See Illinois v. Allen, 397 U.S. 337, 338 (1970); Bustamante v. Eyman, 456 F.2d 269, 273 (9th Cir.1972). Because Bloyd must knowingly and voluntarily waive his sixth amendment rights, state trial counsel's consent to the district court's rulings on these questions did not waive Bloyd's right to challenge the violations. See Bustamante, 456 F.2d at 274; cf. United States v. Houtchens, 926 F.2d 824, 826 (9th Cir.1991) (failure to appear must be knowing and voluntary).
 
 
 7
 The parties dispute the standard for assessing the impact of the state trial court's errors. Compare United States v. Kupau, 781 F.2d 740, 743 (9th Cir.) (claiming to apply a plain error standard), cert. denied, 479 U.S. 823 (1986) with United States v. Brown, 832 F.2d 128, 130 (9th Cir.1987) (harmless beyond a reasonable doubt). We acknowledge some difficulty in reconciling the cases. Without deciding which standard is correct, we conclude that any error by the district court was harmless beyond a reasonable doubt.
 
 
 8
 * Neither Bloyd nor his state trial counsel was present for the court reporter's readback to the jury. The state trial court admonished the court reporter about the readback he was to perform, Bloyd, 729 P.2d at 818 n. 13, but did not specifically admonish the jury. We have imposed an exacting standard for showing harmless error when a government agent has unsupervised contact with the jury. Brown, 832 F.2d at 130. We perceive a difference, however, between a law enforcement agent, whose duty is to investigate and to convict the defendant, and a court reporter, whose duty is to the court. See Cal.Gov't Code § 69942.
 
 
 9
 We presume that the reporter faithfully executes his duty to the court. The state trial court admonished the reporter about the importance of the readback, and, although he has no detailed recollection of the events, the reporter indicates that he was fully aware of the importance of faithfully executing his duty. Absent any specific suggestion of improper conduct by the court reporter, we conclude that the district court's error, allowing the readback outside the presence of either defendant or his counsel, was harmless beyond a reasonable doubt. See also infra Subpart C (compelling ballistics evidence).
 
 B
 
 10
 Bloyd suggests that his presence at the hearing on whether to allow the jury to consider the bottle of diazepam would have somehow resulted in a motion to reopen the trial. As an initial matter, we are not certain that the state trial court had authority to remove the bottle of diazepam from evidence once the case had gone to the jury. It was part of a properly admitted exhibit that the jury was free to examine in its deliberations.
 
 
 11
 We will assume, however, that the state trial court had authority either to include or to remove the bottle of diazepam from evidence. Had Bloyd been at the hearing, he still would have had no awareness of the paradoxical rage phenomenon. Absent such an awareness, Bloyd presumably would have suggested reopening the trial so that the prosecution could reinforce just how vulnerable Martha would have been after a diazepam overdose.
 
 
 12
 Bloyd might have sought to exclude the bottle of diazepam. If successful, the judge would have instructed the jury not to consider the bottle, despite Bloyd's attempts at trial to portray Martha as an abuser of diazepam. And the jury could consider the autopsy results in any event. We conclude that any error in excluding Bloyd from the hearing on the diazepam bottle was harmless beyond a reasonable doubt. See also infra Subpart C (compelling ballistics evidence).
 
 C
 
 13
 Bloyd admitted his presence in the trailer during the shootings. He testified that he accidentally caused Martha's death. His involvement in the events of April 27, 1981, in some manner is undisputed.
 
 
 14
 Bloyd's testimony was for the jury to evaluate. Based on all the evidence before the jury, there is clear support for the following propositions: that Martha could not have shot her father first; that North's gunshot wound was inconsistent with a struggle with Martha, and that none of Martha's bone fragments and hair materials were found on North's body; that the copper jacket from the bullet that killed North was found lying on Martha's prone body. This compelling evidence could command the conclusion that Martha was dead before North was shot. The jury was free to conclude that Bloyd executed North in cold blood. We would reverse Bloyd's first degree murder conviction only for per se error.
 
 
 15
 Neither did the jury have to believe that Bloyd shot Martha in the type of struggle to which he testified. The record supports the fact that Martha was five feet eight inches tall, placing the gun barrel at least five feet above the floor when the gun discharged. Bloyd would have the jury believe that the bullet that killed Martha exited her skull, traveled almost straight down for more than three feet and then traveled along the wall in a path that defies the laws of physics. The compelling evidence commands the conclusion that Martha's head was about two feet above the trailer floor when she was shot. The jury was not compelled to believe Bloyd when he testified otherwise.
 
 
 16
 By setting up his defense as an immediate reaction to a life-threatening situation, Bloyd foreclosed the argument that he had no malice[1] by virtue of a sudden quarrel or heat of passion. The only other way that Bloyd could have had no malice is if he honestly but unreasonably believed that he needed to shoot Martha in self-defense. See Bloyd, 729 P.2d at 815 n. 8 (jury instruction on voluntary manslaughter). If a struggle actually took place, the jury could conclude that Bloyd shot Martha after initially overpowering her and throwing her to the floor. The jury was then free to conclude that Bloyd could not have honestly believed that he needed to shoot Martha in the face to defend himself. We would reverse Bloyd's second degree murder conviction only for per se error.
 
 IV
 
 17
 Bloyd asserts that he received ineffective assistance from his state trial counsel because of inadequate investigation of the paradoxical rage phenomenon. Whether counsel's performance was ineffective is a mixed question of law and fact. Strickland v. Washington, 466 U.S. 668, 698 (1984). We review most mixed questions de novo, and we have singled out questions involving constitutional rights as especially warranting de novo review. United States v. McConney, 728 F.2d 1195, 1204 (9th Cir.) (en banc), cert. denied, 469 U.S. 824 (1984).
 
 
 18
 Bloyd must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. Strickland, 466 U.S. at 687. We "need not determine whether counsel's performance was deficient before examining the prejudice suffered.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of prejudice ... that course should be followed." Id. at 697. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. For the reasons stated in Subpart III C, we conclude that Bloyd suffered no prejudice.
 
 V
 
 19
 Bloyd argues that by failing to address certain issues in writing, the California Supreme Court denied him due process. If a state affords an appeal as a part of the criminal process, then that appeal must afford due process. Cole v. Arkansas, 333 U.S. 196, 201 (1948); Frank v. Mangum, 237 U.S. 309, 327 (1915). "To conform to due process of law, petitioners were entitled to have the validity of their convictions appraised on the consideration of the case as it was tried and as the issues were determined in the trial court." Cole, 333 U.S. at 202. The California Supreme Court assessed Bloyd's conviction based on the charges he faced at trial and the issues determined there. He received appellate due process.
 
 VI
 
 20
 The district court's denial of Bloyd's application for a writ of habeas corpus is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 Malice distinguishes second degree murder from voluntary manslaughter. Bloyd, 729 P.2d at 815 n. 8