William Nelson **QUARLES**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 8759.

District of Columbia Court of Appeals.

Argued June 18, 1975.

Decided Dec. 31, 1975.

———◆———

William A. Borders, Jr., Washington, D. C., for appellant.

Gerard F. Treanor, Jr., Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry, James F. McMullin, Bernard J. Panetta, II, and Joseph F. McSorley, Asst. U. S. Attys., were on the brief, for appellee.

Before REILLY, Chief Judge, and KELLY and HARRIS, Associate Judges.

KELLY, Associate Judge:

Appellant was apprehended during the execution of a search warrant at an after-hours club and charged with carrying a pistol without a license[1] because he was seen to secrete a loaded .38 caliber revolver behind a radiator during the raid. Upon conviction appellant was sentenced to nine months in prison and fined $1,000. There are two contentions on appeal: that appellant's separate motions for a mistrial and for a new trial, based upon the allegedly erroneous transmission of an unadmitted exhibit to the jury, were improperly denied; and that the trial court's consideration of a lengthy sentencing memorandum submitted to it by the government before sentence was error.

I

Several photographs of the building in which appellant was arrested were admitted in evidence at trial. One, showing the back entrance to the building with the door open and a trash can inside, was not admitted. Nevertheless, this photograph was transmitted to the jury along with four others properly in evidence following a jury request to see the exhibits. The deputy clerk later stated he had not checked to see which of the exhibits had been admitted before sending the exhibits to the jury.

■ We understand appellant's contention to be that his right of presence at trial guaranteed by the Fifth Amendment as well as Super.Ct.Cr.R. 43 was abrogated because the transmission of exhibits was a communication between court and jury which took place in his absence.[2] He cites the recent case of *Rogers v. United States,* 422 U.S. 35, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975), to support the view that where such right has been denied, it is unnecessary to show prejudice to obtain a reversal.[3] The government acknowledges that the transmittal of the photograph was error but does not address the constitution-

1. D.C.Code 1973, § 22–3204.

2. Appellant also raises a subsidiary claim of denial of his Sixth Amendment right to a public trial, a claim we find to be without merit.

3. A violation of a Rule 43 right may be harmless error, *Rogers v. United States, supra* at 40, 95 S.Ct. 2091, but a violation of a constitutional due process right of presence may not. *Miller v. United States,* D.C.App., 250 A.2d 573, 575–76 (1969); *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); *Snyder v. Massachusetts,* 291 U.S. 97, 107–08, 54 S.Ct. 330, 73 L.Ed. 674 (1934), *overruled on other grounds, Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L. Ed.2d 653 (1964).

al issue. It merely asserts that appellant.is not entitled to a new trial because he suffered no prejudice by reason of the admitted error.

*Dallago v. United States,* 138 U.S.App. D.C. 276, 427 F.2d 546 (1969), governs the disposition of appellant's claim. There, in considering an erroneous submission to the jury of portions of Securities and Exchange Commission files in a prosecution for violations of the Securities Act of 1933 and the Securities Exchange Act of 1934, the circuit court held that the transmission of items in evidence is a ministerial activity which can be delegated by the trial court. It held further that the transmission of the questioned items was not "a stage of the trial" within the meaning of Fed.R.Crim.P. 43, so that the defendant's presence was not required by that rule.

In our judgment, there was no communication whatsoever in the transmittal of the instant exhibits between the court and the jury.[4] As the *Dallago* court pointed out, "at some time prior to [the] verdict [the jurors], are entitled to examine the documents admitted in evidence" and unless there are unusual circumstances present, such as a large and unwieldy mass of material, or unless counsel requests, neither his presence nor that of the defendant is required. *Dallago v. United States, supra* at 283, 427 F.2d at 553. Similar considerations—the ministerial nature of the activity and the lack of unusual circumstances—lead us here to conclude that appellant had no Fifth Amendment right to be present when the requested exhibits were transmitted to the jury. Consequently, no such right could have been violated by the procedure utilized.

The proper standard for evaluating appellant's claim of error is whether or not he suffered prejudice as a result of the events that occurred.

[T]he principle that the jury may consider only matter that has been received in evidence is so fundamental that a breach of it should not be condoned if there is the slightest possibility that harm could have resulted. . . . [Citations omitted.] [*United States v. Adams,* 385 F.2d 548, 550–51 (2d Cir. 1967).]

If the judgment of the jury was substantially swayed by the erroneous transmittal of exhibits, then a reversal is required. *Dallago v. United States, supra* at 290, 427 F.2d at 560.

We have carefully examined the record before us and have concluded that the unadmitted photograph could have had no such effect on the jury. The interior of the back entranceway and the location of the trash can had been a matter of dispute with regard to a codefendant who had been accused of stuffing a jacket with a gun and narcotics in the pockets in the trash can. In contrast, appellant was first sighted and subsequently arrested in a "kitchen area" of the building which was reached only after going through the rear door and an enclosed porch. At the hearing on the motion for new trial, defense counsel stated that he had not put that photograph in evidence "because one of the disputed problems in the case was whether or not the coat was put in the trash can at the back door. . . . " Thus, as to ap-

---

4. The case of *Rogers v. United States, supra,* 422 U.S. at 39, 95 S.Ct. 2091, is thus inapposite, since it deals with actual communication (by note) between the judge and jury. In *Rogers* the Supreme Court reversed a conviction for making threats to harm the President on the ground, raised sua sponte, that the judge had given the jury instructions without the defendant being present. *See also*

*United States v. Adams,* 385 F.2d 548, 550 (2d Cir. 1967) in which, although defense counsel was present, a judgment of conviction for selling cocaine was reversed because the trial judge knowingly caused writings not admitted in evidence to be transmitted to the jury at their request and over counsel's objection.

pellant's case, the photograph was simply irrelevant.[5]

## II

Two days before sentencing, the prosecution submitted to the trial judge and to defense counsel a memorandum which described appellant as a prominent figure in the District's largest numbers operation. The memorandum stated that appellant had fifteen previous arrests (no convictions) including several for gambling violations. The information concerning appellant's gambling ties was obtained from two reliable informants who had personal knowledge of appellant's activities. Additionally, a special agent of the F. B. I. who for the past five years had investigated gambling in the District, submitted an affidavit stating that six confidential sources had at different times identified appellant as an active participant in the District's largest gambling operation.[6] The memorandum, noting the proclivity of gamblers to carry weapons and to use them, urged the court to impose the maximum penalties of a year's confinement and a $1,000 fine.[7]

At sentencing appellant's counsel vigorously objected to the prosecutor's memorandum and opposed any further oral allocution. Counsel argued before the trial judge and now argues on appeal that D.C. Code 1973, § 23–103 does not permit allocution by the prosecutor unless and until the defendant has made a statement at sentencing. The trial judge after examining the statute rejected this interpretation. The appellant made no statement and his counsel's remarks were limited to protesting the propriety of the prosecution's allocution. The trial judge sentenced appellant to nine months in jail and imposed a $1,000 fine. She commented that for a first offender with no previous convictions a suspended sentence would normally be imposed; however, due to the prosecution's allocution, a harsher sentence was appropriate.

At issue is whether at sentencing the government may allocute if a defendant chooses not to make a statement. D. C.Code 1973, § 23–103 provides that:

Before imposing sentence the court may disclose to the defendant's counsel and to the prosecuting attorney, but not to one and not the other, all or part of any pre-sentencing report submitted to the court in the case. The court also prior to imposing sentence shall afford counsel an opportunity to speak on behalf of the defendant and shall address the defendant personally and ask him if he wishes to make a statement in his own behalf and to present any information in mitigation of punishment. *At any time when the defendant or his counsel addresses the court on the sentence to be imposed, the prosecuting attorney shall, if he wishes, have an equivalent opportunity to address the court and to make a recommendation to the court on the sentence to be imposed and to present information in support of his recommendation.* Such information as the defendant or his counsel or the prosecuting attorney may present shall at all times be subject to the applicable rules of mutual discovery. . . . (Emphasis added.)

A superficial reading of this language would appear to support appellant's contention. However, an examination of both the prior court practice and the legislative history of the statute precludes such an interpretation. Before passage of the Dis-

---

5. *Accord, United States v. Yoppolo*, 435 F.2d 625, 627 (6th Cir. 1970) [transcripts of grand jury testimony used by the defense in cross-examining government witnesses, not received in evidence, and inadvertently transmitted to the jury resulted in no prejudice to defendants.]

6. The memorandum did not disclose the identity of either the informants or the confidential sources but it did contain statements regarding the reliability of both.

7. *See* D.C.Code 1973, §§ 22–3204, 22–3215.

trict of Columbia Court Reform and Criminal Procedure Act of 1970,[8] the prevailing practice at sentencing was to permit the defendant to present mitigating information or to make a statement to the court but to prohibit the prosecution from rebutting the defendant or from presenting any recommendation on sentencing.[9] The legislative history is quite clear as to the Congressional intent to permit active participation by the prosecution in the sentencing process. The testimony on this specific section includes the following dialogue:

> MR. SANTARELLI. The Federal Rules of Criminal Procedure are silent on the Government's right to allocution prior to sentence, and the practice varies from district to district. Our view is that the Government has a definite role to play in the sentencing process, and that it should be able to refute any misstatements made by the defendant or his counsel, and to make recommendations concerning sentencing.
>
> MR. ABERNETHY. Do you mean it cannot use the views of the prosecutor?
>
> MR. SANTARELLI. No statute prohibits it, but it is not done in practice. There has developed something in this District, a tradition not sanctioned by statute, that the courts do not allow the prosecution to be heard at the time of allocution.
>
> MR. ABERNETHY. What do you write into this reorganization act?
>
> MR. SANTARELLI. We provide that the court shall hear the prosecution if the prosecution wishes to be heard at the time of sentencing, where a very important decision is made.

MR. ABERNETHY. All right.[10]

This section had a further purpose of preventing ex parte representations by defense counsel to the trial judge concerning sentencing. The words "[a]t any time when the defendant or his counsel addresses the court on the sentence to be imposed . . . .", were intended not to limit or condition the government's right to allocute on a prior representation by defendant but rather to assure an opportunity for the government to present its views on sentencing whenever the defense counsel chose to submit information to the sentencing judge.[11] Appellant's suggested statutory interpretation is in direct conflict with Congress' intent to both preserve the defendant's right to allocute and to assure the government an active role in the sentencing procedure.

The judgment on appeal is

*Affirmed.*

---

8. Pub.L.No.91–358 (July 29, 1970), 84 Stat. 473.

9. Rauh and Silbert, *Criminal Law and Procedure: D.C.Court Reform and Criminal Procedure Act of 1970*, 20 Am.U.L.Rev. 252, 334–35 (1970–1971).

10. *Hearings on H.R. 13689 and H.R. 12854 Before Subcomms. Nos. 1 and 3 of the Comm.*

*on the District of Columbia*, 91st Cong., 1st Sess. 27 (1969).

11. Rauh and Silbert, *supra* note 9, suggest that frequently representations were made by defense counsel to a judge in chambers without participation by the prosecution. The statute now prohibits such a practice.