Calvin HARRIS, Appellant,

v.

UNITED STATES, Appellee.

No. 82–961.

District of Columbia Court of Appeals.
Submitted June 27, 1984.
Decided March 15, 1985.

Vincent A. Jankoski, Washington, D.C., for appellant.

Carolyn Adams, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellee.

Before BELSON and ROGERS, Associate Judges, and PAIR, Associate Judge, Retired.

BELSON, Associate Judge:

Appellant was convicted by a jury of a single count of possession of a controlled substance (heroin). D.C. Code § 33–541(d) (Supp.1984). On this appeal he raises several issues, the most significant of which is the refusal by the trial court to permit him to be present when certain testimony was read back to the jury by the court reporter. We affirm.

We set forth the evidence in detail because we will refer later to the harmless error doctrine. Although appellant was charged only with possession, the government's evidence showed that appellant sold a packet of heroin to an undercover police officer. Officer Ronald Smith testified that on February 3, 1982, he was approached by two men in an alley near Wheeler Road, Wahler Place, and Barnaby Street in Southeast Washington. The two men offered to sell him a packet of heroin for $35. Smith agreed and gave $40 to one of the two, who was later identified as appellant. Appellant walked around a corner and returned a moment later and handed Smith a packet containing heroin. Smith and the two men then walked over to a third man. Appellant gave this third man the $40. The third man gave appellant $5 in change, which appellant passed to Officer Smith. Smith then walked out of the alley and back to his car, where he broadcast a lookout describing the three suspects.

The suspect alleged to be appellant was described as a slim black male, about 5′7″, medium complected, wearing a rust-colored jacket and blue jeans. Although the lookout mentioned that the other two suspects were wearing hats, appellant was not described as wearing a hat.

Within minutes, other police officers had detained three men who appeared to match the descriptions. Smith drove by to make an identification, and informed the other officers that two of the men they were holding were the two (including appellant) who had approached him in the alley, but that the third man was not the one who had taken the $40 from appellant. The third man was therefore released, but appellant and the other suspect were arrested. Appellant was wearing a rust-colored jacket but had on brown corduroy pants rather than blue jeans. He was also wearing a hat.

Officer George Woody testified that he, too, was on undercover duty that day. He observed the transaction between Officer Smith and the three men from a nearby vantage point. He was able to see that one of the men who first approached Smith was slim and was wearing a rust-colored coat. After Smith left, this individual remained in the area within Woody's view. He remained in view until other officers arrived and detained him.

Officer Freddie Lawson testified that on the date in question he was on duty as part of an arrest team. Based on the description radioed by Officer Smith, he detained a man wearing a rust-colored coat, who was then identified by Smith as one of the participants in the drug sale. This person was appellant Harris, whom Lawson identified in court.

Finally, the government called Detective Johnny St. Valentine Brown as an expert in narcotics trafficking. Detective Brown first testified about police procedures for handling seized contraband.[1] Over appellant's objection, Brown next testified about the ways in which heroin may be used, and he opined that the amount purchased by Officer Smith from appellant constituted a usable amount of the drug. Brown also explained that narcotics dealers often worked in teams of two or three to minimize the dangers of robbery and arrest. As a result, he said, when drug dealers are stopped by police they frequently will not have any drugs or money on them. Again over defense objection, Brown was permitted to testify that he was familiar with the area in which appellant was arrested and that the sale of heroin and other illegal drugs was prevalent there. Appellant's counsel chose not to cross examine Detective Brown.

The only defense witness was appellant. He testified that he lived only a block from where he was arrested and that at the time he had been on his way to buy cigarettes. He also testified that there were 50 to 100 people in the vicinity at the time of his arrest.

I

The testimony in this case was presented on a Thursday and a Friday. The jury began its deliberations on Monday. On Tuesday morning the jury sent a note to the trial judge asking for a transcript of the testimony of Officers Smith and Woody. Appellant objected, but asked that, if the objection was overruled, the jury also be given the testimony of Officer Lawson.[2] The trial court ruled that, "given the time interval, including the weekend having intervened," it would exercise its discretion to grant the jury's request. The court denied appellant's request to have Officer Lawson's testimony presented, however.

Because there were other matters taking place in the courtroom, the trial court di-

---

1. The government also called Steven Hudak, a chemist with the Drug Enforcement Administration, who testified regarding the specific procedures employed in this case to ensure the chain of custody of the evidence. Hudak also testified that the white powder bought by Officer Smith weighed 384.4 milligrams and contained 4.9 percent heroin. These matters were not disputed.

2. While Officer Smith had testified that he drove to the spot where appellant was being held after his arrest and stopped his car at the time he identified appellant there, Officer Lawson had testified that Smith drove along Wheeler Road at 5 to 10 miles per hour and did not stop.

rected that the court reporter read the testimony of the two officers to the jury in the jury room. The attorneys were to be present, but the court denied a request by appellant's counsel that appellant also be present. Finally, the court instructed the jury not to make any statements while the testimony was being read and not to resume deliberations until the court reporter and the attorneys had left the jury room.

### A.

 Appellant contends that the trial court erred in allowing the testimony of Officers Smith and Wood to be read back to the jury. Even if that action was proper, he argues, the court erred in refusing his request to include Officer Lawson's testimony with the other testimony to be read to the jury. These contentions are without merit. A trial judge has broad discretion in deciding whether to have testimony reread to the jury. *Kleinbart v. United States,* 426 A.2d 343, 356 (D.C.1981); *United States v. Mackin,* 163 U.S.App.D.C. 427, 440, 502 F.2d 429, 442, *cert. denied,* 419 U.S. 1052, 95 S.Ct. 629, 42 L.Ed.2d 647 (1974); *United States v. DePalma,* 414 F.2d 394, 396 (9th Cir.1969), *cert. denied,* 396 U.S. 1046, 90 S.Ct. 697, 24 L.Ed.2d 690 (1970). Although Officer Lawson's testimony arguably contradicted one portion of Officer Smith's, we find no abuse of discretion in the trial court's decision to direct the rereading of the testimony of only those witnesses requested by the jury. We note that the court specifically directed that the cross examination of the two witnesses be read, not just the direct testimony. *Cf. United States v. Desist,* 384 F.2d 889, 904–05 (2d Cir.1967) (no abuse of discretion in permitting the rereading to jury of government agents' direct testimony about conversations they overheard but not the cross-examination of the agents' ability

to hear), *aff'd,* 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969).

### B.

 Appellant next contends that the trial court erred in refusing to allow him to be present for the rereading of the officers' testimony. It is well established that a defendant has a constitutional right to be present at every stage of his trial. *Illinois v. Allen,* 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970); *Winestock v. United States,* 429 A.2d 519, 529 (D.C. 1981); *Wade v. United States,* 142 U.S. App.D.C. 356, 360, 441 F.2d 1046, 1050 (1971). *See also* Super.Ct.Crim.R. 43(a). This has been interpreted to mean that a defendant has the right to be present during communications between the judge and the jury, *Rogers v. United States,* 422 U.S. 35, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975); *Shields v. United States,* 273 U.S. 583, 47 S.Ct. 478, 71 L.Ed. 787 (1927); *Winestock, supra,* 429 A.2d at 528, and for the return of the jury's verdict, Super.Ct.Crim.R. 43(a); *see Rogers, supra,* 422 U.S. at 39, 95 S.Ct. at 2094.[3]

This right is not absolute, however. *Heiligh v. United States,* 379 A.2d 689, 693 (D.C.1977). In *Snyder v. Massachusetts,* 291 U.S. 97, 105–106, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934), the Supreme Court stated that a defendant had the right to be present in person "whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." Applying that test, the Court held that a defendant did not have a constitutional right to be present at a view by the jury of the scene of the crime. The Court found that the defendant's interests were adequately protected by the presence of his attorney and that his personal presence would not have aided his

---

**3.** It is uncertain whether the right to be present for the delivery of a verdict is of constitutional dimension, or is merely a requirement of Rule 43(a). *See* 3A C. WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 721, nn. 6, 10 (1982). The same may be said of the right to be present

during those portions of jury selection held at the bench, *Robinson v. United States,* 448 A.2d 853, 855 (D.C.1982), a matter recently considered by this court, en banc, *Boone v. United States,* 483 A.2d 1135 (D.C.1984). *See* concurring opinion of Belson, J., at 1142.

defense. *Id.* at 108–13, 54 S.Ct. at 333–35. *See Heiligh, supra,* 379 A.2d at 693.

This court in *Quarles v. United States,* 349 A.2d 690 (D.C.1975), *cert. denied,* 425 U.S. 972, 96 S.Ct. 2169, 48 L.Ed.2d 795 (1976), considered a claim that a defendant's right to be present was violated when trial exhibits were transmitted to the jury outside his presence after the jury requested to see the exhibits. The court rejected the claim in view of the "ministerial nature of the activity and the lack of unusual circumstances." *Id.* at 692.

We think sending the court reporter to read to the jury the testimony of Officers Smith and Woody implicated appellant's rights more than the "ministerial" action of transmitting exhibits in *Quarles.* An inadvertent omission of a part of this testimony, a mistake in the reading of a shorthand symbol or an inappropriate emphasis of voice could have occurred. The situation here, however, was ameliorated by the presence of the two defense counsel and the prosecutor who had heard the original testimony and listened to its being read back to the jury. This is not a situation where the defendant enjoyed knowledge superior to or different from that of his counsel.[4] We think the danger inherent in the procedure employed in this case is no greater than that in the view conducted in *Snyder v. Massachusetts, supra,* 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674, outside the presence of the accused. Thus, in our view, no error was committed.

■ Even were we to assume, *arguendo,* that error was committed, we would be persuaded it was harmless. *See Rogers, supra,* 422 U.S. at 40, 95 S.Ct. at 2095 (violation of right to be present may in some circumstances be harmless error); *Winestock, supra,* 429 A.2d at 529 (error in communicating with jury outside defendant's presence was harmless beyond a reasonable doubt). The testimony of the two witnesses was to be read in its entirety,

and the jury was carefully instructed not to make any comments during the reading or until the attorneys and the reporter had left the room. The court explained to the jury that the reading could be done in the courtroom but that it would be inconvenient because other matters were being handled there. We think this diminished the possibility that the jury would speculate adversely about the absence of the defendant. *See Wade, supra,* 142 U.S.App.D.C. at 360, 441 F.2d at 1050. Finally, as we have noted, appellant's counsel was present to ensure that nothing untoward occurred in the reading of the testimony; neither in the trial court nor before us has counsel contended that anything amiss did in fact occur.

Appellant cites *Bustamante v. Eyman,* 456 F.2d 269 (9th Cir.1972), in support of his argument that the record here is insufficient to support a finding of no prejudice. In that case, after 7 hours of deliberations on a capital charge, the jury requested a rereading of the instructions. The instructions were replayed for the jury on a tape recorder in the presence of the prosecutor and defense counsel; the defendant, however, was not present. On an appeal from the denial of a habeas corpus petition, the court of appeals remanded to the district court for further proceedings, holding that the record was insufficient to assess whether the error was harmless. *Bustamante* is distinguishable from this case in that there the state authorities had refused to provide the federal court with *any* record of the state court proceedings. In this case, by contrast, we have before us the transcript of the entire trial, including the discussion of the jury's request for the officers' testimony and the court's instructions explicitly setting forth the procedure for the rereading.

We are aware of two cases in which, as in this case, a court reporter was sent into the jury room to read portions of the pro-

---

**4.** *See Boone v. United States,* 483 A.2d 1135, 1143–44 (D.C.1984), Belson, J., concurring (defendant has right to be present at jury voir dire

held at bench because his knowledge, not shared by his attorney, may affect exercise of challenge for cause).

ceedings to the jurors. In *Kokas v. Commonwealth*, 194 Ky. 44, 237 S.W. 1090 (1922), like *Bustamante* a capital case, the court held it was reversible error to have the reporter read portions of the testimony to the jury in the jury room in the absence of the defendant. The court's opinion, however, reveals circumstances that distinguish that case from this one:

> It appears from the affidavit of the official stenographer ... that only he and the members of the jury were present while he was in the jury room, and that he remained with the jury in the room more than an hour and perhaps as long as an hour and a half. It also appears from his affidavit that he read to the jury disconnectedly only such portions of the evidence as they asked to have read, which was exclusively evidence in behalf of the commonwealth, and that during the reading from his notes there was a lot of talking by the members of the jury and some by affiant, who was able to recall but little that was said.

*Id.* at 46, 237 S.W. at 1090. Here appellant's attorney was present for the reading, the portions to be read were fixed beforehand following argument by counsel, and the jury was admonished to say nothing in the presence of the attorneys and the reporter.

Also distinguishable is *Little v. United States*, 73 F.2d 861, 864–67 (10th Cir.1934), in which the court held it to be reversible error to send the reporter alone into the jury room to read back the instructions. In open court the trial judge directed the reporter "to attend in the jury room and read the instructions in their entirety from beginning to end, with no repetition of any part, or emphasis on any part, and, at the completion of the reading, to retire...." *Id.* at 864. Significantly, the trial judge

failed to arrange to have counsel present with the court reporter. The appellate court, however, expressed its concern "that no one should be with a jury while it is engaged in its deliberations." *Id.* That problem was alleviated in our case by the trial court's specific instructions that for the purpose of reading the testimony the jury room would be "a hearing forum" and that there should be no deliberations while the reporter and the attorneys were in the room. The trial judge's instructions in *Little* were not as explicit in this regard. On that basis and in view of the absence of counsel that case may be distinguished from the one before us.

We think the danger of prejudice in this case was not significantly greater than that in *United States v. Schor*, 418 F.2d 26, 30–31 (2d Cir.1969), in which, upon its request, the jury was given the transcript of the testimony of two witnesses. The court said that "in strict theory" neither Rule 43 nor the constitutional rights of due process or confrontation should require the defendant's presence when a transcript is sent to the jury "any more than when an exhibit is sent. In either case, the jury gets no more than 'what they had already been given.'" *Id.* at 31 (dictum) (citation omitted). Here, as the government notes, appellant had a chance to object to the questions posed to Officers Smith and Woody and also to cross-examine them fully.

In light of all the circumstances, we think there is no reasonable possibility that appellant suffered prejudice by his absence from the reading of the testimony. See *Winestock, supra,* 429 A.2d at 529; *Wade, supra,* 142 U.S.App.D.C. at 360, 441 F.2d at 1050; *Walker v. United States,* 116 U.S.App.D.C. 221, 222–23, 322 F.2d 434, 435–36 (1963), *cert. denied,* 375 U.S. 976, 84 S.Ct. 494, 11 L.Ed.2d 421 (1964).[5] Accord-

---

5. We recognize that the right to be present is a personal right that may be violated even though defense counsel is present during the stage for which the defendant is absent. *See, e.g., Faretta v. California,* 422 U.S. 806, 819 & n. 15, 95 S.Ct. 2525, 2533 & n. 15, 45 L.Ed.2d 562 (1975) ("The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense."); *Wade, supra,* 142 U.S.App. D.C. at 357–60, 441 F.2d at 1047–50 (error to communicate with jury in absence of defendant despite presence of defense counsel and despite counsel's disclaimer of usefulness of defendant's

ingly, we would find any error here was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

## II

Appellant contends that the trial court erred in permitting Detective Johnny St. Valentine Brown to testify about the methods of administering heroin and about the prevalence of narcotics trafficking in the area where appellant was arrested. In each instance the court overruled appellant's objection. Appellant argues that the probative value of this testimony was outweighed by the danger of undue prejudice. We conclude that no reversible error occurred.

As noted above, Detective Brown was called by the government as an expert in narcotics trafficking. The admission of expert testimony is committed to the broad discretion of the trial court, whose decision must be sustained unless it is "manifestly erroneous." *Brooks v. United States*, 448 A.2d 253, 258 (D.C.1982); *Ibn-Tamas v. United States*, 407 A.2d 626, 632 (D.C. 1979). Appellant is correct that, as with any evidence, the trial court must determine whether the probative value of the expert testimony is outweighed by the danger of unfair prejudice to the accused. *Id. See generally* McCORMICK, EVIDENCE § 185 (2d ed. 1972). This, too, is a matter within the discretion of the trial court, *see, e.g., Punch v. United States*, 377 A.2d 1353, 1358 (D.C.1977) (applying abuse of discretion standard to probativity/prejudice

balancing), *cert. denied*, 435 U.S. 955, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978); *Coleman v. United States*, 379 A.2d 710, 712 (D.C. 1977) (same), whose decision we should not lightly disturb, *see* McCORMICK, *supra*, § 185, at 440 ("This balancing of intangibles—probative values against probative dangers—is so much a matter where wise judges in particular situations may differ that a leeway of discretion is generally recognized").

In a prosecution for the possession of illegal drugs, the government must establish that the quantity of the drug constituted a "usable amount." *Edelin v. United States*, 227 A.2d 395 (D.C.1967). Detective Brown's testimony explaining the ways in which heroin may be administered was probative in this essential element. *See id.* at 398–99 (citing with approval *State v. Moreno*, 92 Ariz. 116, 374 P.2d 872 (1962) (en banc)); *see also Wilkerson v. United States*, 427 A.2d 923, 927 (D.C.) (in rape prosecution, although identity was the critical issue, no abuse of discretion in admitting photographs of the victim's body to establish element of force), *cert. denied*, 454 U.S. 852, 102 S.Ct. 295, 70 L.Ed.2d 143 (1981). We are mindful of the possibly inflammatory effect of testimony concerning the use of narcotics. *See, e.g., United States v. Green*, 548 F.2d 1261, 1268–70 (6th Cir.1977). However, upon review of the transcript we conclude that the detective's testimony "was not so inflammatory that [we can say] the judge abused his broad discretion in admitting it." *Coleman, supra*, 379 A.2d at 712 (citations omitted).[6]

presence). Nevertheless, the presence of counsel is a factor that properly may be considered in assessing whether a defendant suffered prejudice by his absence. *See Snyder v. Massachusetts, supra,* 291 U.S. at 113, 54 S.Ct. at 335 ("Far from being harmful," presence of counsel at jury view "supplies an additional assurance that nothing helpful to either side will be overlooked upon the view"); *United States v. Provenzano,* 620 F.2d 985, 998 (3d Cir.), *cert. denied,* 449 U.S. 899, 101 S.Ct. 267, 66 L.Ed.2d 129 (1980) (absence of defendant from in-chambers conference concerning dismissal of a juror held harmless error, in part because counsel was present

to protect defendant's rights); *United States v. Brown,* 571 F.2d 980, 987 (6th Cir.1978) (same).

6. We disagree with appellant's assertion that Detective Brown's testimony was "far more inflammatory and prejudicial" than the testimony condemned in *Green, supra,* 548 F.2d at 1268–70. There, in a prosecution for conspiracy to manufacture a controlled substance, an expert witness was permitted to testify "at length" about the hallucinogenic reactions from a drug known as DMT, which the expert compared to "more notoriously abused compounds such as LSD." *Id.* at 1265, 1269. In this case the detec-

Neither was it an abuse of discretion to admit the detective's testimony concerning the prevalence of narcotics activity in the area where appellant was arrested. This evidence, along with Brown's testimony about the *modus operandi* of drug dealers, tended to corroborate the other officers' testimony that the transaction between Officer Smith and appellant in fact involved possession of a controlled substance. *See Wilkerson, supra,* 427 A.2d at 927. Although appellant's counsel did not contest that a controlled substance was present, there was no stipulation on this point and the government was required to show that appellant possessed heroin.

While the probativity of this testimony may have been slight, we conclude that the prejudice to appellant was also minimal. Thus, we find that the trial court did not abuse its discretion in allowing this testimony.[7]

*Affirmed.*

ROGERS, Associate Judge, concurring:

The trial court denied the defendant's request to be present while the jury was read the testimony of the undercover and observing police officers. This evidence constituted the government's contested evidence and is over seventy pages of the transcript. The defendant was present in the courtroom when the request was denied; he was also on personal recognizance. In denying the request, the court indicated the reading could take place in the courtroom but as other matters were occurring there, "for convenience," it would be done in the jury room.

This court, sitting en banc, has recently examined a defendant's right under Super. Ct.Crim.R. 43(a) to be present at all stages of his trial. *Boone v. United States,* 483 A.2d 1135, 1136–42 (D.C.1984). Accordingly, in light of our broad interpretation of Rule 43(a) in *Boone,* I join only in that portion of part I B of the opinion which holds that assuming error, the error was harmless beyond a reasonable doubt.

---

tive described the effects of heroin in just three sentences. While his testimony describing the manner of injecting heroin was graphic, his description of the effect was not comparable to that in *Green.*

7. Moreover, we note that although the prosecutor did refer briefly to this testimony in his closing argument, he did not suggest that because appellant was in the area he must have been dealing in drugs.